# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SEAH CHEE WEI and TAN SUAH PIN,

                        Plaintiffs,

v.

ROCKY POINT INTERNATIONAL LLC,

                        Defendant.

Case No. 16-CV-1282-JPS

**ORDER**

      In this action, Plaintiffs, Liquidators of Traxiar Drilling Partners II Pte., Ltd. ("Traxair"), assert several causes of action arising from allegedly fraudulent transfers of funds to Defendant Rocky Point International LLC ("Rocky Point"). (Docket #1). On September 26, 2016, Plaintiffs filed an expedited motion for temporary restraining order and preliminary injunction which seeks to restrain Defendant from transferring the subject assets as well as a home in the state of Wisconsin which was purportedly renovated using a portion of those funds. (Docket #3). The Court set an expedited briefing schedule for the motion. (Docket #18). The motion is now fully briefed and, for the reasons stated below, it will be denied.

**1.    BACKGROUND**

      The following facts, most of which are undisputed, are drawn from the complaint and the parties' submissions. In late 2013, Symphony Ventures Pte. Ltd. ("Symphony") entered into a loan agreement for $15 million with Traxiar in order to finance the down payment on the Somnath, an oil rig located in Qatar. Pursuant to the agreement, in December 2013, Symphony advanced $6 million of the $15 million loan to a bank account owned by Dag Dvergsten Pte., Ltd. ("DDPTE"). The transfer was not made directly to Traxiar because according to Mr. Dvergsten, a Norwegian businessman and

owner of DDPTE, Traxiar did not have its own bank account. Once it did have an account, DDPTE was to transfer the $6 million to Traxiar's account.

Plaintiffs allege that DDPTE did not follow through on its promise. Instead, on December 27, 2013, DDPTE transferred $3.25 million of the $6 million to TY Global, LLC ("TY Global"), a company located in Houston, Texas. Three days later, on December 30, 2013, TY Global transferred $2.25 million to AT Offshore, LLC ("AT Offshore"), another Houston company. On January 2, 2014, AT Offshore transferred $2 million to Rocky Point, which is located in Pewaukee, Wisconsin. All the transfers were by bank wire. Mr. Dvergsten does not have an ownership interest in either TY Global or AT Offshore but, at the time of the transfers, he is alleged to have owned and controlled DDPTE and Rocky Point. Because it appears that Mr. Dvergsten transferred Traxair's funds through TY Global and AT Offshore into a company which he controls, Plaintiffs believe that Dvergsten intended to keep for himself the $2 million transferred to Rocky Point rather than transfer it to Traxair.

According to Rocky Point, the $3.25 million transferred to TY Global was for commissions and fees for brokerage services. The loan agreement between Symphony and Traxiar contemplated Traxiar paying brokers for their services in connection with the oil rig purchase. TY Global transferred some of that payment to AT Offshore, which then sent $2 million to Rocky Point. Rocky Point claims that it received the $2 million so that it could reinvest it for TY Global's benefit. Rocky Point allegedly used most of the funds to renovate a lake house in Pewaukee, Wisconsin.

Eventually, Traxiar defaulted on its loan from Symphony because the Somnath was not available for sale. Traxiar never purchased the Somnath and never returned the $6 million. Plaintiffs, acting as liquidators for Traxiar,

have recovered funds so that the balance due from Traxiar is now just a little more than $4.3 million.[1]

In this action, Plaintiffs seek to recover Rocky Point's $2 million pursuant to the Wisconsin Uniform Fraudulent Transfers Act ("WUFTA"), which allows a creditor to recover transfers made either "[w]ith actual intent to hinder, delay or defraud any creditor" or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer." *See* Wis. Stat. § 242.04(1). Plaintiffs say that both circumstances occurred here, since, among other things, there are no business relationships between TY Global, AT Offshore, and Rocky Point that would provide a justification for the transfers. Moreover, Plaintiffs assert, the allegedly secretive nature of the transactions indicates that they were undertaken with the intent to defraud Traxair. In addition to their WUFTA claims, Plaintiffs assert numerous related common-law causes of action, including unjust enrichment and conversion.

Plaintiffs originally filed this action in the U.S. District Court for the Southern District of Texas, where TY Global and AT Offshore are located. However, the district court there dismissed Rocky Point from that case for want of personal jurisdiction. Plaintiffs then filed their complaint in this court, and they now seek a preliminary injunction restraining $2 million of

---

[1]Although not relevant to the disposition of the instant motion, Rocky Point asserts that it is Symphony, the only remaining creditor of Traxair, that has swindled Dag Dvergsten and his related entities, not the other way around. Rocky Point contends that the Somnath was available for sale and that, despite this, Symphony wrongfully accelerated payment of the loan agreement, thereby forcing Traxair into liquidation. (Docket #22 at 9). In the process of liquidating Traxair, Rocky Point alleges that Plaintiffs have recovered far more than they were ever originally entitled to. *Id.* at 9–10. Thus, in Rocky Point's view, Symphony is using Traxair's liquidation not to offset its losses but to make a profit on the failed deal. *See id.*

Rocky Point's assets and the Wisconsin lake house during the pendency of these proceedings.

**2.     APPLICABLE LAW**

Plaintiffs must establish each of the following elements to be entitled to a preliminary injunction: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016). A preliminary injunction is "an extraordinary remedy and is never awarded as of right." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016). To meet their burden, Plaintiffs must make a "clear showing that [they are] entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). WUFTA permits courts to issue preliminary injunctions against further disposition of the subject assets "[s]ubject to applicable principles of equity and in accordance with applicable rules of civil procedure." Wis. Stat. § 242.07(c)(1).

**3.     ANALYSIS**

Plaintiffs have not made the robust showing needed to secure a preliminary injunction in this case. The Court need only discuss one of the required elements—irreparable harm—to show why Plaintiffs' motion must be denied.

Plaintiffs have not established that they will suffer irreparable harm if the injunctive relief they request is not granted. As the Supreme Court has stated, "[t]he key word in this consideration is irreparable.... The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quotation

Page 4 of 9

Case 2:16-cv-01282-JPS   Filed 12/02/16   Page 4 of 9   Document 24

omitted). Where harm may be compensated by an award of money damages, courts generally have refused to find that harm irreparable. *See, e.g.*, *Morton v. Beyer*, 822 F.2d 364, 371–72 (3d Cir. 1987); *Foxboro Co. v. Arabian Am. Oil Co.*, 805 F.2d 34, 36 (1st Cir. 1986). The availability of monetary damages, however, "does not always mean that the remedy at law is 'adequate.'" *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011).

The Seventh Circuit has stated that "[o]nly if [the plaintiff] will suffer irreparable harm in the interim—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction. . . . The question is [] whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). This is a high burden. The plaintiff must show not simply that money damages at judgment will be "inadequate"—he must show that they will be "seriously deficient as a remedy for the harm suffered." *Id.* The plaintiff may meet this burden by demonstrating that the defendant "may become insolvent before a final judgment can be collected." *Id.* The plaintiff could also proffer evidence tending to show that "the defendant intends to dissipate his assets to make a judgment awarding damages uncollectible." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994); *Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994) ("[A]n injunction may issue to stop a defendant from dissipating assets in an effort to frustrate a judgment.")

Plaintiffs offer only speculation, not evidence, that Rocky Point will dispose of the subject assets. Plaintiffs state that "Rocky Point, along with DDPTE, TY Global[,] and AT Offshore, have already engaged in a series of transactions designed to put the $3.25 million transferred out of Singapore to the United States outside the reach of creditors." (Docket #4 at 10). They

believe that "Mr. Dvergsten has ties to Norway so funds can easily be wired" to that country. *Id.* "Further," according to Plaintiffs, "[Dvergsten] could encumber or transfer the Lake House resulting in additional actions to unwind, if possible, those transactions." *Id.* Plaintiffs conclude that "[i]t is highly likely that—without an injunction—the funds or proceeds from the Lake House will be moved to one of Mr. Dvergsten's numerous international companies to further perpetuate the fraudulent scheme." *Id.*

Plaintiffs' conjecture is not enough to show that Rocky Point is likely to transfer or encumber its assets. *Allstate Settlement Corp. v. Doucette*, Civil Action No. H–15–1130, 2015 WL 2091767, at *2 (S.D. Tex. May 5, 2015) (denying preliminary injunction where the plaintiff conclusorily asserted that the defendant might dispose of the funds at issue). The record contains no evidence that Rocky Point has tried to do this or that it intends to do so in the future. *See Capital Distributions Servs, Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195, 210 (E.D.N.Y. 2006) (record showed that the defendant had tried to encumber his properties after being served and refused to answer deposition questions about his assets). For instance, there is no indication that Rocky Point attempted to transfer the subject assets when the prospect of this litigation (or the Texas litigation) arose. *See Rodriguez v. Montalvo*, 371 F. Supp. 2d 3, 4–5 (D. Mass. 2005) (likelihood of irreparable shown where defendants had tried to convey the subject property when the threat of litigation emerged). Indeed, Plaintiffs concede that Rocky Point has owned the lake house for more than eleven years, (Docket #4 at 11), without giving any reason to suspect that Rocky Point will change that course. Nor do Plaintiffs assert that Rocky Point is insolvent or will become so during the course of litigation, thereby depriving Plaintiffs of the ability to collect a money judgment. *Hughes*, 17 F.3d at 696. The Supreme Court has emphasized

that a plaintiff must do more than show a possibility that irreparable harm may occur; he must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). Plaintiffs rely on possibility, not probability, and so their argument fails.

Much of Plaintiffs' motion conflates irreparable harm with their belief that they are sure to win on the merits. Plaintiffs argue that because the entities in question have already engaged in a series of fraudulent transactions—which at this point is an unproven allegation—it is probable that they will do so again during the pendency of this case. Likelihood of success on the merits and danger of irreparable harm are normally treated as distinct elements required for the issuance of a preliminary injunction. *See Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir. 1997). The Seventh Circuit has, in some instances, applied a sliding scale to them, finding that a strong showing on one might compensate for the weakness of the other. *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Inc. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) ("[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.") And on the question of likelihood of success, the Seventh Circuit instructs that a claim need "not necessarily [be] a winning one," but must be "strong enough to justify exposing [the defendant] to financial risks until the district court can decide the merits." *Id.* at 726.

Plaintiffs' showing on the merits, at least at this early stage, does not make up for their failure to demonstrate irreparable harm. Both sides present a substantial body of conflicting testimonial and documentary evidence on the question of whether the transfers at issue represent the legitimate payment of brokerage fees and reinvestment of those fees. *Compare* (Docket

#4-1 ¶ 4) (affidavit of TY Global owner stating that Dvergsten ordered him to prepare false invoices for brokerage services), *with* (Docket #22-2 and #22-3) (emails from TY Global owner to various parties concerning purchase of the Somnath); (Docket #22-12) (email from TY Global owner explaining breakdown of total brokerage payment between participating brokers). Rocky Point believes this is so and points to the language of the loan agreement itself, which permitted Traxair to use the funds to pay brokerage fees. (Docket #22 at 6–7). Paying brokers to help in the purchase of the Somnath may be a plausible, legitimate business reason for the transfers, as would be TY Global's decision to reinvest their fees through Rocky Point. The reinvestment plan also explains why Rocky Point readily admits that it does not own the $2 million but it merely investing it for TY Global. *Id.* at 7–8. This destabilizes Plaintiffs' notion that these transfers were fraudulent. Of course, Plaintiffs think the "brokerage fee" story is a ruse concocted by Mr. Dvergsten, pointing to a number of "badges of fraud" that mark these transactions as suspicious. *See* Wis. Stat. § 242.04(2).

Yet Plaintiffs' belief in their claims cannot overcome the conflicting evidence presented. Were the Court to accept Plaintiffs' view, any plausible fraudulent transfer allegations would support a preliminary injunction restricting the funds at issue. Since preliminary injunctive relief is "an extraordinary remedy," *Knox*, 637 F. App'x at 228, this cannot be the rule. In the end, only time and discovery will tell whether Plaintiffs' theories are correct. At this moment, however, Plaintiffs' weak showing on their likelihood of success, coupled with their complete failure to demonstrate that irreparable harm will occur without an injunction, means that the Court cannot grant them a preliminary injunction.

## 4. CONCLUSION

Plaintiffs have failed to establish the prerequisites necessary to obtain a preliminary injunction. As a result, their motion must be denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (if the plaintiff cannot establish both likelihood of success and irreparable injury, "a court's inquiry is over and the injunction must be denied").

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for a temporary restraining order and a preliminary injunction (Docket #3) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of December, 2016.

BY THE COURT:

*s/ J. P. Stadtmueller*
J.P. Stadtmueller
U.S. District Judge