# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SEAH CHEE WEI and TAN SUAH PIN,

    Plaintiffs,

v.

ROCKY POINT INTERNATIONAL LLC,

    Defendant.

Case No. 16-CV-1282-JPS

**ORDER**

    In this case, Plaintiffs, liquidators of Traxiar Drilling Partners II Pte., Ltd. ("Traxair"), assert several claims arising from allegedly fraudulent transfers of funds to Defendant Rocky Point International LLC ("Rocky Point"). Currently ripe for decision are Rocky Point's motion to dismiss for failure to join indispensable parties (Docket #12 at 1–2) and the motion to intervene by Treatmil Holdings, Ltd. ("Treatmil"), AMS Asia Pacific, Ltd., and Dag Dvergsten AS (collectively, the "Intervenors") (Docket #14). For the reasons stated below, both motions will be denied.[1]

**1.**     **BACKGROUND**

    In its prior order on Plaintiffs' motion for preliminary injunction, the Court reviewed the complex series of events giving rise to this litigation. *See Wei v. Rocky Point Int'l, LLC*, Case No. 16-CV-1282-JPS, 2016 WL 7046802, at *1–2 (E.D. Wis. Dec. 2, 2016). To fully understand the relationships between the parties and the Intervenors, the Court must review those facts again in some detail.

---

[1] At the scheduling conference held on January 5, 2017, the parties inquired whether they should provide further briefing on these pending motions. *See* (Docket #29). The Court, having reviewed the parties' current submissions, does not find that additional briefing is necessary and therefore issues this decision based on the extant submissions.

In late 2013, Symphony Ventures Pte. Ltd. ("Symphony") entered into a loan agreement for $15 million with Traxiar in order to finance the down payment on the Somnath, an oil rig located in Qatar. The Intervenors are several entities which guaranteed or provided security for the loan agreement. Specifically, Treatmil allegedly owns Traxair and acted as guarantor for the loan agreement. AMS Asia Pacific, Ltd., which is also owned by Treatmil, pledged security for the loan through one of its subsidiaries, AMS Atlantic Marine Services Singapore Pte. Ltd. ("AMS Singapore"), in the form of a share charge to Symphony of one share in AMS Singapore. Finally, Dag Dvergsten AS, which owns 36.5% of Treatmil, pledged to Symphony over 730 of its Treatmil shares as security for the loan.

Pursuant to the loan agreement, in December 2013, Symphony advanced $6 million of the $15 million loan to a bank account owned by Dag Dvergsten Pte., Ltd. ("DDPTE"). The transfer was not made directly to Traxiar because the company did not have its own bank account. Once it did have an account, ostensibly DDPTE was supposed to transfer the $6 million to Traxiar.

Plaintiffs allege that DDPTE did not follow through on its promise. Instead, DDPTE transferred $3.25 million of the $6 million to TY Global, LLC ("TY Global"), a company located in Houston, Texas. TY Global then transferred $2.25 million to AT Offshore, LLC ("AT Offshore"), another Houston company. AT Offshore transferred $2 million of that amount to Rocky Point. Plaintiffs believe that Dag Dvergsten, a Norwegian businessman who owns DDPTE and Rocky Point, masterminded this series of transfers in order to steal the $2 million transferred to Rocky Point. Rocky Point, on the other hand, asserts that the $3.25 million transferred to TY Global was payment for brokerage services. TY Global transferred some of that payment

to AT Offshore, which then sent $2 million to Rocky Point. Rocky Point claims that it received the $2 million so that it could reinvest it for TY Global's benefit. Rocky Point allegedly used most of the funds to renovate a lake house in Pewaukee, Wisconsin.

Eventually, Symphony accelerated the amounts due under the loan agreement because it believed that the Somnath was no longer for sale. Traxiar defaulted on the loan and was ordered into liquidation. Plaintiffs, acting as liquidators for Traxair, assert that they have recovered funds so that the balance due to Symphony from Traxiar is now just a little more than $4.3 million.

In this action, Plaintiffs seek to recover Rocky Point's $2 million pursuant to the Wisconsin Uniform Fraudulent Transfers Act ("WUFTA"), which allows a creditor to recover transfers made either "[w]ith actual intent to hinder, delay or defraud any creditor" or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer." *See* Wis. Stat. § 242.04(1). Plaintiffs originally filed this action in the U.S. District Court for the Southern District of Texas, where TY Global and AT Offshore are located. However, the district court there dismissed Rocky Point for want of personal jurisdiction. Plaintiffs then filed the instant complaint in this Court.

Rocky Point and the Intervenors take a far different view of the purpose of this litigation. The Intervenors believe that Plaintiffs are essentially acting as debt collectors for Symphony, which they allege is the only remaining creditor of Traxiar. Orchestrating the whole affair is Symphony's principal, Michel Kurzer ("Kurzer"). The Intervenors allege a

Page 3 of 13
Case 2:16-cv-01282-JPS   Filed 01/06/17   Page 3 of 13   Document 30

nefarious scheme by Kurzer to use the defaulted loan agreement to extract funds from various entities.[2]

According to the Intervenors, the scheme began when Kurzer prematurely accelerated the amount due under the loan agreement based on the false premise that the Somnath was no longer available for purchase. Once the loan balance was accelerated, Kurzer forced the liquidation of Traxair. He then used Plaintiffs, Traxair's liquidators, to engage in litigation to collect amounts due under the agreement. Kurzer also allegedly used his positions of power within the Intervenors, which he gained by virtue of their share pledges, to drain funds from those entities for his own use. For instance, the Intervenors claim that Kurzer, who took over as sole director of AMS Singapore as a result of the share pledge, allowed one of his associates to extract $8.5 million from that company. The Court need not relate the full scope of Kurzer's campaign for purposes of deciding this motion. It is sufficient to state that the Liquidators believe Kurzer or the Plaintiffs have failed to fully credit the amounts they have collected, either through litigation or by draining the Intervenors from within, against the obligation due under the loan agreement, and have in fact managed to collect amounts in excess of that obligation, to the tune of $6.95 million. In the Liquidators' view, this action forms one more chapter in Kurzer's scheme.

The Intervenors seek to assert several counterclaims against Plaintiffs, Symphony, and Kurzer based on the alleged overpayments they have received, including breaches of contract and fiduciary duty. Plaintiffs, Symphony, and Kurzer are all allegedly residents of Singapore. While they

---

[2]Plaintiffs dispute many of the Intervenors' factual allegations, *see* (Docket #21 at 5–6), but even accepting them as true, the Intervenors' attempt to intervene here must be rejected.

do not state their citizenship, the Court gathers that the Intervenors are all foreign entities.

## 2. APPLICABLE LAW

### 2.1 Required Joinder of Parties Under Rule 19

Federal Rule of Civil Procedure 19 sets forth the standards for determining whether a necessary party is missing from the case and, if so, what should be done. *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 635 (7th Cir. 2009). Rule 19(a) provides, in pertinent part:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (I) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Rule 19(b) instructs the court how to proceed if such a party cannot be joined. Put simply, the court must determine whether the case can fairly proceed without the necessary party or whether, to avoid unfair prejudice, the case should be dismissed. *See id.* 19(b). Rule 12(b)(7) provides that a defendant may move to dismiss any action where the plaintiff has failed to join a party required under Rule 19. *Id.* 12(b)(7).

Rule 19 is designed to "permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir. 1990). A court's application of Rule 19 "entails a pragmatic approach, focusing on realistic analysis of the facts of each case." *Bio–Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 452 (7th Cir. 1977); *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968). "Under the 'necessary party' analysis of Rule 19(a), the relative rights of the parties are considered under state law." *Sta–Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 284–85 (7th Cir. 1996). The party invoking Rule 19 bears the initial burden to show why a party is necessary under Subsection (a). *See Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011); *Disabled in Action of Pa. v. S.E. Pa. Transp. Auth.*, 635 F.3d 87, 97 (6th Cir. 2011); *Pulitzer–Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 2006).

### 2.2 Intervention Under Rule 24

Intervention is governed by Federal Rule of Civil Procedure 24. That Rule defines the circumstances in which a court must or may allow a party to intervene. *See* Fed. R. Civ. P. 24. A party has a right to intervene when: (1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the named parties inadequately represent that interest. *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013); Fed. R. Civ. P. 24(a). Intervention as of right under Rule 24(a) requires a "direct, significant[,] and legally protectable" interest in the question at issue in the lawsuit. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). This is a fact-specific, case-by-case determination. *Sec. Ins. Co. of Hartford v. Schipporeit*, Inc., 69 F.3d 1377, 1381 (7th Cir. 1995). A court may

Page 6 of 13

Case 2:16-cv-01282-JPS   Filed 01/06/17   Page 6 of 13   Document 30

otherwise permit a party to intervene when: (1) the intervenor files a timely motion requesting the same; (2) their claim or defense shares a common question of law or fact with the main action; and (3) intervention would not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b). The party seeking to intervene bears the burden to establish each element required for intervention. *See Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007).

**3.     ANALYSIS**

Although the facts underlying this case are complex, the disposition here is simple. The instant motions must be denied because they rest on faulty notions about the scope of this case. Rocky Point and the Liquidators believe that Plaintiffs are using this litigation to collect amounts due under the loan agreement between Traxair and Symphony. Even if true, Plaintiffs' motives are irrelevant. The claims in this action relate to an allegedly fraudulent transfer of money from a Texas entity to Rocky Point. Any claims about satisfaction of the loan obligation have not been (and almost certainly

could not be) raised in this Court.³ The Court will address each of the two motions in turn below.

### 3.1 Rocky Point's Motion for Joinder of Indispensable Parties

Rocky Point's motion under Rule 19 consists of two paragraphs appended to the beginning of its answer. (Docket #12 at 1–2). The "motion" contains no citations to evidence or legal authority. By way of argument, Rocky Point asserts that Symphony and Kurzer have not advised Plaintiffs of all the funds they have collected in connection with the loan agreement. *Id.* at 1. Further, Symphony and Kurzer have allegedly "misapplied, mishandled and misdirected the proceeds from the security pledged for the loan." *Id.* at 2. Finally, Kurzer has "abused his position as sole director of [AMS Singapore]. . ., and he has absconded with some of the money and conspired with others to collect more than is due." *Id.* Rocky Point claims that "[a]ll of

---

³Were the Court to join the Intervenors in this case, it would destroy subject-matter jurisdiction. Jurisdiction in this case is premised on 28 U.S.C. § 1332(a)(2), which extends subject-matter jurisdiction over suits between citizens of States and citizens or subjects of foreign states. 28 U.S.C. § 1332(a)(2). The diversity statute does not provide jurisdiction in cases where there are foreign parties on both sides of the dispute and U.S. citizens on only one side. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 361 F.3d 359, 361 (7th Cir. 2004); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993). That would be the state of this case if the instant motions were granted, since Rocky Point is the only U.S. party and Plaintiffs, Symphony, Kurzer, and the Intervenors all appear to be foreign citizens.

Moreover, although joining Symphony and Kurzer as third-party defendants would not destroy diversity, *see Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67 n.1 (1996), there is no indication that they are within the personal jurisdiction of this Court beyond Rocky Point's specious assertion that they have availed themselves of the jurisdiction of the Court by sending Plaintiffs here to collect their debt. *See* (Docket #13 ¶ 6); *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (holding that "[s]pecific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities"). Yet because the Court finds that the Intervenors should not be permitted to intervene and that Symphony and Kurzer are not indispensable parties, it need not grapple with these threats to its jurisdiction.

these actions have exposed Rocky Point to liability it would otherwise not have, and could result in double recovery, or multiple and inconsistent obligations on behalf of Rocky Point and other companies who have guaranteed or pledged security for the loan." *Id.* Rocky Point makes no actual claims against Symphony or Kurzer in its answer, but merely states that those claims "are further described in pleadings filed with this pleading," which the Court understands to be the Intervenors' third-party complaint. *Id.*; *see also* (Docket #13) (Intervenors' third-party complaint).

This presentation falls well short of demonstrating why Symphony and Kurzer are necessary parties under Rule 19. Indeed, Rocky Point does little more than repeat the language of that Rule and insert its own name. It does not explain in any meaningful way why the circumstances here satisfy the specific requirements of the Rule, and to be sure, this Court is not cast in the role of undertaking Rocky Point's heavy lifting on its behalf.

In any event, the Court finds unavailing Rocky Point's theory as to the relevance of Symphony and Kurzer—*i.e.*, that they masterminded this litigation to extract more money from Rocky Point and the Intervenors. Plaintiffs' claim in this case is, at its core, that DDPTE took Traxair's money that should have been paid to Symphony and absconded with it. Eventually, some of that money ended up under Rocky Point's control. Although the disputes between these parties span much of the globe, the question in this Court is straightforward: was the transfer of funds to Rocky Point fraudulent, in violation of WUFTA?

To answer this question, the Court need not determine how much is left to be paid on the loan agreement between Traxair and Symphony. Consider the hypothetical situation in which Traxair, after learning that DDPTE stole its funds, found another source of money and kept up its

obligations under the loan agreement with Symphony. In that case, Plaintiffs could still come to this Court seeking to recover the money DDPTE had stolen. Whether the original loan was fully or partially repaid would be of no moment. That is true in this case as well. Thus, Rocky Point has not shown that Symphony and Kurzer have an interest relating to the subject of the action or why failure to join them would expose Rocky Point to multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B).

Nor do Plaintiffs' claims require the Court to consider Rocky Point's and the Intervenors' theory that Kurzer is the puppet-master behind this case. The allegedly fraudulent transfers underlying this case occurred well before Traxair's default and liquidation. As a result, whether Plaintiffs are acting as Kurzer's cronies has no bearing on whether the transfers at issue here were fraudulent. The parties, who have been involved in the entire course of the Somnath saga, see every part of it as linked. The Court, on the other hand, appreciates the narrow issues it must decide and leaves to more appropriate fora the resolution of the parties' other disagreements. Indeed, to hear Rocky Point's claims against Symphony and Kurzer would cause the very waste of judicial resources that Rule 19 is designed to prevent. *See Moore*, 901 F.2d at 1447. Accordingly, the Court will deny Rocky Point's motion to join Symphony and Kurzer under Rule 19.

### 3.2 The Intervenors' Motion to Intervene

The Court reaches a similar conclusion with respect to the Intervenors' motion to intervene in this case. Like Rocky Point, the Intervenors' arguments are sparse and conclusory. They claim first that they are entitled to intervene as of right under Rule 24(a) because they have an interest in "the loan agreement that is the subject of this [a]ction, and they are so situated that disposing of this action may as a practical matter impair or impede their

ability to protect their interests." (Docket #14 at 1). They further argue that permissive intervention would be appropriate "as they have claims and defenses that share with the main action common questions of law and fact." *Id.* at 2. The Intervenors do not explain what those common questions are, but the Court gathers from the balance of the motion that the Intervenors are referring to questions relating to satisfaction of the loan agreement. *See id.* at 2–3.

They claim that if they are not joined in this action, they "will be unable to protect their interests, which include ensuring all offsets, payments and credits" on the loan agreement are accounted for. *Id.* at 3. Further, they would be unable to assert defenses in this case arising from the alleged overpayments to Plaintiffs and Kurzer; likewise, they could not bring counterclaims based on those overpayments and Kurzer's other illicit conduct. *See id.* at 4. The Intervenors note that "[a]ll of these claims impact the amounts due under the loan agreement, if any." *Id.*

Like Rocky Point, the Intervenors' notion that they should join this action rests on the false premise that this case turns on repayment of the Traxair-Symphony loan. From the Court's perspective, the loan agreement is only relevant to explain why Traxair paid $6 million to DDPTE in the first place. Whether DDPTE's transfers of those funds were fraudulent is not affected by anything that occurred subsequent to the transfers, including Kurzer's alleged campaign of trickery to turn a profit on Traxair's liquidation. In short, the Intervenors are simply wrong to state that the loan agreement is "the subject of this action." *Id.* at 2. Plaintiffs' fraudulent transfer claims are the true subject of this case, and the Intervenors make no effort to claim a "direct, significant, and legally protectable interest" therein. *Walker*, 705 F.3d at 658. Nor do the Intervenors demonstrate why Plaintiffs' claims share any

Page 11 of 13

Case 2:16-cv-01282-JPS   Filed 01/06/17   Page 11 of 13   Document 30

question of law or fact with their claims relating to satisfaction of the loan agreement. Fed. R. Civ. P. 24(b). Moreover, the Intervenors fail to explain how any decision in this case would foreclose or in any way affect their claims. *See Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994). If the Intervenors wish to pursue their claims against Plaintiffs or Kurzer, they may do so in the appropriate jurisdiction regardless of what happens here. To permit them to litigate these unrelated claims in this Court would work substantial prejudice to the timely and efficient disposition of the existing claims. *See* Fed. R. Civ. P. 24(b)(3); *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991). Consequently, the Intervenors' motion must be denied.

### 4. CONCLUSION

These parties clearly have a long and troubled relationship, but the Court invites them in future filings to remain focused on the narrow issues presented in this action. As shown above, the Intervenors are not entitled to intervene in this case as of right, nor will the Court permit them to do so permissively. Further, Rocky Point's contention that Symphony and Kurzer are indispensable parties is without merit. As such, both Rocky Point's and the Intervenors' motions must be denied.

Accordingly,

**IT IS ORDERED** that Rocky Point's motion to dismiss for failure to join indispensable parties (Docket #12) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Intervenors' motion to intervene (Docket #14) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Intervenors' third party complaint (Docket #13) be and the same is hereby **STRICKEN** from the record herein; and

**IT IS FURTHER ORDERED** that intervenors Treatmil Holdings, Ltd., AMS Asia Pacific, Ltd., and Dag Dvergsten AS be and the same are hereby **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge